## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PRIME CORE TECHNOLOGIES INC., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| PCT LITIGATION TRUST, | |
| Plaintiff, | Adv. Pro. No. 24-50141 (JKS) |
| v. | **Related Adv. D.I. 1, 25, and 59**[2] |
| DIGITAL ASSET REDEMPTION, LLC, | |
| Defendant. | |

## OPINION

Before the Court is the defendant Digital Asset Redemption, LLC's ("DAR" or

"Defendant") (i) Motion to Dismiss[3] the Complaint filed by PCT Litigation Trust ("PCT" or the

"Trust"), pursuant to Federal Rule of Civil Procedure 12(b)(7), for failure to join parties under

Federal Rule of Civil Procedure 19[4] (the "Motion to Dismiss") and (ii) Motion for Leave to File

---

[1]  The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528).

[2]  Citations to D.I. __ reference the docket in the lead bankruptcy case *In re Prime Core Technologies Inc.*, Case No. 23-11161. Citations to Adv. D.I. __ reference the docket entries in this adversary proceeding, *PCT Litigation Trust v. Digital Asset Redemption, LLC*, Adv. Pro. No. 24-50141.

[3]  Adv. D.I. 25 (Motion to Dismiss) and Adv. D.I. 26 (Memorandum in Support of Motion to Dismiss).  PCT opposed the Motion to Dismiss (Adv. D.I. 38) and DAR filed a reply in support of its Motion to Dismiss (Adv. D.I. 43).  DAR filed a request for oral argument (Adv. D.I. 45) and, later, the Notice of Completion of Briefing.  Adv. D.I. 50.

[4]  Fed. R. Civ. P. 12(b)(7) and 19 are made applicable to this proceeding by Fed. R. Bankr. P. 7012 and 7019, respectively.

a Declaration in Support of its Motion to Dismiss, pursuant to Rule 7007-1(b) of the Local Rules

of the Bankruptcy Court for the District of Delaware (the "Motion for Leave").[5]  For the reasons

set forth below, the Court will deny the Motion to Dismiss and the Motion for Leave.[6]

## JURISDICTION

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 157(b)(2) and 1334(b) and the Amended Standing Order of Reference from the United

States District Court for the District of Delaware, dated February 29, 2012.  This proceeding is a

core matter pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this district pursuant to 28

U.S.C. § 1409(a).

## BACKGROUND

### A. Procedural Background

On August 14, 2023, Prime Core Technologies Inc. and its affiliated debtors ("Prime" or

"Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the

"Chapter 11 Cases").

PCT was created pursuant to the Amended Joint Chapter 11 Plan of Reorganization for

Prime Core Technologies Inc. and its Affiliated Debtors[7] (the "Plan"), which was confirmed on

December 21, 2023.[8]  The Plan went effective on January 5, 2024, and PCT was established to,

---

[5] Adv. D.I. 59.  PCT opposed the Motion for Leave (Adv. D.I. 62), and DAR filed a reply in support of the Motion for Leave (Adv. D.I. 65).  DAR filed a Notice of Completion of Briefing on October 24, 2025.  Adv. D.I. 73.  DAR filed a request for oral argument (Adv. D.I. 68) and, later, the Notice of Completion of Briefing.  Adv. D.I. 73.

[6] This Court did not hear oral argument on either motion because the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.

[7] D.I. 592.

[8] See D.I. 644 (Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code).

among other things, commence, litigate and settle Vested Causes of Action (as defined in the Plan).[9]

On October 7, 2024, PCT commenced this adversary proceeding by filing a Complaint, pursuant to 11 U.S.C. §§ 547 and 550, seeking, among other things, to avoid and recover two transfers (the "Transfers"), totaling not less than $9,947,500.00 (USD), that the Debtors transferred to DAR during the 90-day period prior to the commencement of the Chapter 11 Cases, plus interest, attorneys' fees, and costs.

DAR asserts that the Complaint relates to a series of transactions in June 2024 involving approximately $10 million of funds that included initial and subsequent transfers to parties other than DAR and benefited parties other than DAR that PCT failed to name. DAR denies it received any Transfers from the Debtors but rather acted as an agent and conduit for "Consultant," and Consultant's customer, "Company," in connection with a ransomware attack.[10] DAR maintains that Consultant and Company are required parties pursuant to Rule 19 because they are the actual transferees or beneficiaries of the Transfers.

### B.  Factual Background

DAR helps victims of ransomware attacks ("Victims") recover critical systems. Among other services, DAR helps Victims obtain the cryptocurrency necessary to pay cybercriminals to provide the Victims with decryption keys or otherwise return the Victim's critical systems or

---

[9]  D.I. 592 (Plan) at §§ 1.116, 6.21.

[10]  The names of the two entities that DAR argues are indispensable to this adversary proceeding are filed under seal pursuant to 11 U.S.C. §§ 105(a) and 107(b), Fed. R. Bankr. P. 9018, and Del. Bankr. L.R. 9018-1(d). Adv. D.I. 29 and 47. As this opinion is not sealed, the Court refers to the sealed entities as "Company" and "Consultant."

information (the "Payment Services").  DAR is retained by Victims and digital forensic and

incident response companies hired by Victims.[11]

DAR's Payment Services help Victims make ransomware payments by: (a) analyzing

threat intelligence and conducting extensive due diligence to ensure that Victims do not transact

with sanctioned entities; (b) obtaining a cryptocurrency wallet and transferring that wallet to the

Victim or its agents; (c) expediently sourcing and procuring a large amount of cryptocurrency at

a fixed price; and (d) assisting the Victims with the process of sending cryptocurrency to

cybercriminals in response to an extortion demand.[12]

To accomplish these tasks, DAR often assists customers with purchasing cryptocurrency

to allow the customer to obtain the requisite cryptocurrency to pay ransom in a timely manner.[13]

DAR may undertake the following steps in making ransomware payments:[14]

a. DAR creates a cryptocurrency wallet for its customer pursuant to a wallet
   creation agreement.  The customer is the wallet's titleholder.  The customer
   typically grants DAR a limited power of attorney to access the wallet and
   transfer funds solely at the customer's direction;

b. DAR transfers digital assets from its ledger wallet (a cryptocurrency wallet
   used for storage of DAR's digital assets inventory) to DAR's Blockstream
   wallet (a cryptocurrency wallet DAR then uses to transfer funds purchased by
   its customer to its customer's wallet);

c. DAR sends the digital assets from its Blockstream wallet to the customer's
   wallet, often a separate Blockstream wallet;

d. At the customer's direction, DAR causes digital assets to be transferred from
   the customer's wallet to the "Threat Actor's" designated cryptocurrency
   wallet;

e. With the ransomware payment complete, DAR invoices its customer;

---

[11] *See* Adv. D.I. 27 (Decl. of Matthew Leidlein in Support of Motion to Dismiss) (the "Leidlein Decl.") at ¶¶ 1-2.

[12] *See* Adv. D.I. 27 (Leidlein Decl.) at ¶ 3.

[13] Adv. D.I. 27 (Leidlein Decl.) at ¶ 4.

[14] Defined terms in the steps shall have the meaning ascribed to them in the Motion to Dismiss.

    f.   After the customer pays DAR, DAR typically uses the proceeds (or a significant portion of the proceeds) to acquire digital assets to replace the digital assets sold to the customer so that it can help future customers.  For this step, DAR typically sends the proceeds, which are in U.S. dollars, to an over-the-counter desk or digital asset exchange (each, an "Exchange"), at which DAR purchases digital assets; and

    g.   Upon purchasing digital assets from the Exchange, DAR causes the Exchange to transfer the assets to its ledger wallet.[15]

When a large ransom demand is made upon a customer, a customer may send DAR U.S. dollars before receiving an invoice to enable DAR to obtain enough digital assets to satisfy the demand.

### C.  The Transfers[16]

DAR contends that the Transfers are consistent with the actions DAR undertakes on behalf of its customers.  DAR continues that the Transfers were undertaken with Company's funds, at Company's and Consultant's direction, and in response to Company's ransomware incident (the "Incident").

In or around June 2023, Company experienced a ransomware attack purportedly perpetrated by the C10p ransomware group ("C10p").[17]  C10p allegedly extorted Company by demonstrating it possessed data pertaining to Company's business and threatening to disclose the stolen data by publishing or selling it.

Company retained Consultant to negotiate the ransom payment and pay C10p to prevent the release or publication of its stolen data.  Consultant, in turn, entered into an agreement with DAR for DAR to provide the Payment Services to Consultant's customers, which included Company (the "Payment Services Agreement").

_____

[15]  Adv. D.I. 27 (Leidlein Decl.) at ¶ 4.

[16]  The facts regarding the Transfers are taken from the Motion to Dismiss.

[17]  Adv. D.I. 26 (Brief in Support of Motion to Dismiss) at ¶14 (C10p is described as "a threat actor which has perpetrated a wide range of ransomware and cyber extortion attacks since at least 2019.").

After Consultant and DAR were retained, Company anticipated that it may have to pay C10p up to $10 million in bitcoin.[18]  Company needed to acquire bitcoin to satisfy the ransomware demand.  Company placed $10 million of its funds with DAR to acquire the bitcoin needed to pay C10p.

DAR maintained an account with Prime that could be used in connection with the Transfers (the "Prime Account").  Consultant instructed DAR to use its Prime Account for the Transfers.  DAR processed the Transfers to fulfill Company's and Consultant's objective of acquiring sufficient cryptocurrency for Company to pay the ransom.

As explained by DAR, on June 16, 2023, Company sent a $10 million wire from its account to DAR's Prime Account.  On June 19, 2023, on Consultant's written direction, DAR caused $5 million to be transferred from the Prime Account to a third party's bank account.  The $5 million was subsequently used to purchase bitcoin as part of the transaction.  The wire was received June 20, 2023.  On June 20, 2023, Consultant and DAR executed a Wallet Creation Agreement ("WCA") creating a cryptocurrency wallet for Consultant.  The WCA enabled DAR to facilitate the transfer of bitcoin from Consultant's wallet to C10p.  The same day, DAR transferred bitcoin (the ransom demand amount) from DAR to the Consultant's wallet.  Also on June 20, 2023, Consultant directed DAR to pay C10p and DAR caused 176 bitcoins to be transferred from Consultant's wallet to the digital asset address specified by C10p.  On June 20,

---

[18]  At the time, 176 bitcoins.  Adv. D.I. 34 (Redacted Memorandum in Support of Motion to Dismiss) at ¶ 20(E).

2023, at Consultant's request, DAR returned via wire $4,947,500 from DAR's Prime Account to Company's account.[19]

DAR seeks to dismiss the Complaint arguing that PCT failed to add indispensable parties: Consultant and Company.  DAR also seeks leave to supplement the record in its Motion for Leave.  This is the Court's decision on the Motion to Dismiss and the Motion for Leave.

## ANALYSIS

### A.  Motion for Leave[20]

Local Rule 7007-1(b) states:

> Citation of Subsequent Authorities.  No additional briefs, affidavits or other papers in support of or in opposition to the motion may be filed without prior approval of the Court, except that a party may call to the Court's attention and briefly discuss pertinent cases decided after a party's final brief is filed or after oral argument.[21]

DAR seeks to supplement the record with the Declaration of Jack O. Snyder, Jr. in Support of the Defendant's Motion to Dismiss (the "Snyder Declaration").[22]  The Snyder Declaration attaches (i) a Statement of Work between Consultant and Norton Rose Fulbright US LLP; and (ii) emails between Company and Consultant.

DAR asserts that the Snyder Declaration contains "new evidence."  In response, PCT argues that (i) the Synder Declaration is not "subsequent legal authority" as required by Local Rule 7007-1(b) and does not introduce anything new for purposes of the Motion to Dismiss; and (ii) PCT would be prejudiced by submission of the Snyder Declaration because it cannot develop

---

[19] Adv. D.I. 34 (Redacted Memorandum of Law in Support of Motion to Dismiss) at ¶ 20.

[20] The Court addresses the Motion for Leave first given its potential impact on the Motion to Dismiss.

[21] Del. Bankr. L.R. 7007-1(b) (2025).

[22] Adv. D.I. 59 (Motion for Leave), Ex. B (Snyder Decl.).

evidence contrary to the declaration and it undermines the efficiency of the resolution of the adversary proceeding.

Local Rule 7007-1(b) provides that no additional affidavit may be filed without prior approval of the Court. As the Synder Declaration is factual, prior approval of the Court is required before filing the declaration in support of the Motion to Dismiss.[23]

The evidence sought to be introduced must be more than "merely collaborative of evidence already on the record."[24] The supplemental document must assist the Court in evaluating the pending motion;[25] or "respond[] to new evidence, facts, or arguments."[26]

The Snyder Declaration attaches the "Statement of Work" between a law firm and Consultant.[27] The Statement of Work contains the following provisions:

- Further, [Consultant] shall be fully responsible for the acts and omissions of any subcontractor use by [Consultant] in performing its obligations hereunder.[28]

- [Consultant] will be entitled to rely on and act in accordance with any verifiable written instructions or directions provided by the Law Firm of Client [Company] and will incur no liability in doing so.[29]

---

[23] Del. Bankr. L.R. 7007-1(b).

[24] *Edwards v. Pennsylvania Tpk. Comm'n*, 80 F. App'x 261, 265 (3d Cir. 2003) (holding that the decision whether to grant leave is within the sound discretion of the Court).

[25] *Jackson v. Ivens*, No. CIV.A. 01-559-JJF, 2010 WL 2802279, at *2 (D. Del. July 13, 2010).

[26] *Novartis AG v. Actavis, Inc.*, 243 F. Supp. 3d 534, 540 (D. Del. 2017) (citations omitted) ("[Delaware District Court] Local Rule 7.1.2 provides that parties may submit additional papers after briefing is complete only with the Court's approval."). *See also Rockwell Automation, Inc. v. Parcop S.R.L.*, No. CV 21-1238-GBW-JLH, 2023 WL 4397398, at *3 (D. Del. July 7, 2023) (citations omitted) ("Although '[c]ourts in this district disfavor sur-replies,' the Court finds that there has been substantial discovery produced after summary judgment briefing that warrants the parties' ability to supplement their respective briefing to address this new evidence."); *B.B. by & Through Catherine B. v. Delaware Coll. Preparatory Acad.*, No. CV 16-806-CFC, 2019 WL 949204, at *5 (D. Del. Feb. 27, 2019), *vacated and remanded*, 803 F. App'x 593 (3d Cir. 2020) ("A non-moving party always has the right to respond to new arguments raised in a reply by requesting leave to file a sur-reply.").

[27] Adv. D.I. 59 (Motion for Leave), Ex. B (Snyder Decl.) at Ex. 1.

[28] Adv. D.I. 59 (Motion for Leave), Ex. B (Snyder Decl.) at Ex. 1 at 11.

[29] Adv. D.I. 59 (Motion for Leave), Ex. B (Snyder Decl.) at Ex. 1 at 12.

Although the Statement of Work may be relevant to explain the scope of Consultant's employment and role in the Incident, it is not relevant *vis-à-vis* the Transfers from the Debtors to DAR. As a result, the Statement of Work does not assist the Court in determining whether preferential transfers were made from the Debtors to DAR.

The Snyder Declaration also attaches emails between Consultant and Company[30] (the "Consultant/Company Emails"). The Consultant/Company Emails state: "Change of course – Prime Trust is the preferred account. I'll explain when we talk next. We need to move the funds ASAP."[31] Although the Consultant/Company Emails explain the scope of Consultant's and Company's role in the Incident; they are not relevant to the Transfers from Debtors to DAR. As a result, the Consultant/Company Emails do not assist the Court in determining whether preferential Transfers were made from the Debtors to DAR.

The factual statements in the Synder Declaration do not aid the Court's analysis on the Motion to Dismiss and the Motion for Leave to supplement the record will be denied.

Lastly, the Motion for Leave states:[32]

- PCT filed a new adversary action against Company in this Court.
- PCT is suing [Company] over the same transactions at issue in the DAR Action.

The Trust contends that the adversary action against Company has no bearing on whether Company is a "necessary" party in the instant adversary proceeding against DAR. The Trust acknowledges that it intends to stay its Complaint against the Company until resolution of the current action against DAR; and only if the Trust is unable to recover against DAR will it seek to

---

[30] Adv. D.I. 59 (Motion for Leave), Ex. B (Snyder Decl.) at Ex. 2.

[31] Adv. D.I. 59 (Motion for Leave), Ex. B (Snyder Decl.) at Ex. 2.

[32] Adv. D.I. 59 (Motion for Leave) at ¶¶ 12-13.

prosecute the complaint against Company.  However, the Synder Declaration does not discuss this separate adversary proceeding, it is only mentioned in the Motion for Leave.

A plaintiff is limited to a single satisfaction of a preferential transfer under section 550(d).[33]  Section 550(d) is typically implicated in situations where a trustee seeks recovery from multiple parties, and the provision is used to "prohibit a trustee from recovering under section 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code."[34]  As a result, the Trust is prohibited from recovering the same transfer against DAR *and* against Company.[35]  While the Trust may have filed a complaint against Company seeking to recover the same Transfer, this information does not alter the Court's analysis on the Motion to Dismiss.

The Court, however, can take judicial notice of another complaint filed by PCT against Company.[36]  As the Company adversary proceeding is a matter of public record, the Court will take judicial notice of the adversary proceeding against the Company.

---

[33]  11 U.S.C. § 550 ("The trustee is entitled to only a single satisfaction under subsection (a) of this section.").

[34]  *Bakst v. Wetzel (In re Kingsley)*, No. 06-12096-BKC-PGH, 2007 WL 1491188, at *3 (Bankr. S.D. Fla. May 17, 2007) (cleaned up), *aff'd*, 518 F.3d 874 (11th Cir. 2008) (quoting *Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.)*, 312 B.R. 262, 271 (D.N.J. 2004)).

[35]  Additionally, PCT is permitted to plead inconsistent legal theories, claims, and even factual allegations in the alternative.  *Sher v. JPMorgan Chase Funding (In re TMST, Inc.)*, 610 B.R. 807, 825 (Bankr. D. Md. 2019).

[36]  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (holding that the court may take judicial notice of matters of public record); *Barry v. Santander Bank, N.A. (In re: Liberty State Benefits of Delaware, Inc.)*, 541 B.R. 219, 234 (Bankr. D. Del. 2015) ("'The Federal Rules of Evidence provide that a court may take judicial notice of certain facts "not subject to a reasonable dispute' when they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' Fed. R. Evid. 201(b).  Courts may do so unilaterally or upon the request of a party. Fed. R. Evid. 201(c).").

## B. Motion to Dismiss

### 1. Legal Standard

Pursuant to Rule 12(b)(7), a party may move to dismiss a complaint for failure to join a party under Rule 19.[37] Rule 19, which governs joinder of parties, compels a bifurcated analysis.[38] First, the court must determine whether a party is "necessary" to the dispute and, second, the court must evaluate whether a necessary party who cannot be joined is indispensable.[39]

Under Rule 19(a), "a party is necessary if either (1) the present parties will be denied complete relief in the absence of the party to be joined, or (2) the absent party will suffer some loss or be put at risk of suffering such a loss if not joined. As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent person is a necessary party that should be joined if possible.[40]

---

[37] In reviewing a Rule 12(b)(7) motion to dismiss, the court accepts as true the factual allegations of the complaint. *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 686 (D. Del. 2010). "A court making a Rule 19 determination may consider evidence outside the pleadings." *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009) (citation omitted).

[38] *See generally Koppers Co., Inc. v. The Aetna Cas. and Sur. Co.*, 158 F.3d 170, 175 (3d Cir.1998).

[39] Fed. R. Civ. P. 19; *Koppers Co., Inc.*, 158 F.3d at 175 (citations and footnote omitted) ("Subsection (a) of Rule 19 addresses the issue of whether a party should be joined as a 'necessary' party. Subsection (b) concerns the issue of whether a party is an 'indispensable' party. In reviewing a district court's determination pursuant to Rule 19, we must first determine whether a party is a necessary party to the dispute. If the party is determined to be a necessary party but cannot be joined because such joinder would defeat diversity, it must then be determined whether the absent party is an indispensable party.").

[40] *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007) ("Under Rule 19(a), the joinder of parties is compulsory or 'necessary' if their joinder is 'feasible.'"); *CGL, LLC v. Schwab*, No. CIV.A. 11-04593, 2011 WL 4528300, at *1 (E.D. Pa. Sept. 30, 2011) (stating if an absent party is necessary and joinder is possible, the court must allow the plaintiff an opportunity to add the missing necessary party); *Sig Swiss Indus. Co. v. FRES-CO Sys. U.S.A., Inc.*, No. CIV. A. 91-0699, 1991 WL 64593, at *1 (E.D. Pa. Apr. 23, 1991) (same); *Koppers Co.*, 158 F.3d at 175 (same).

If the joinder of a necessary person under Rule 19(a) is impossible, the action may be dismissed if the court cannot, in equity and good conscience, proceed without that person.[41] Factors the court must consider in determining whether the person is indispensable include: the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; the extent to which the prejudice can be lessened through protective measures in the judgment; the adequacy of a judgment rendered in the person's absence; and the adequacy of the plaintiff's remedy if the action is dismissed for nonjoinder.[42]

The movant bears the burden of establishing that dismissal is appropriate based on the failure to join an indispensable party.[43]

### 2. Summary of Parties' Arguments

DAR asserts that it never had dominion and control over the funds, the Transfers were made at the Company's and Consultant's direction, and DAR was not a transferee of a Transfer from any of the Debtors. DAR continues that Consultant and Company are required parties to this adversary proceeding under Rule19(a)(1)(A) and (B) and that relief cannot be granted without joining Consultant and Company. It contends that the failure to join Company and Consultant exposes DAR to significant burdens and the possibility of incurring outsized exposure relative to its role in the Transfers.

The Trust disagrees. The Trust argues that the transfers were made in cryptocurrency and fiat, and the fiat transfers are the subject of the Complaint. The Trust maintains that Consultant

---

[41] Fed. R. Civ. P. 19(b).

[42] Fed. R. Civ. P. 19(b).

[43] *Disabled in Action of Pa. v. SEPTA*, 635 F.3d 87, 97 (3d Cir. 2011).

did not specifically instruct DAR to withdraw fiat from Prime to purchase cryptocurrency. Additionally, the Trust maintains that Prime had no relationship, contractual or otherwise, with Company or Consultant. Lastly, the Trust argues that DAR's actions are beyond those of a mere conduit.

### 3. Rule 19(a)(1)(A): Neither Company nor Consultant is a Required Party for the Court to Award Complete Relief

Rule 19(a)(1)(A) defines a required party as a person in whose absence "the court cannot accord complete relief among existing parties."[44] Rule 19(a)(1)(A) "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court."[45] "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought."[46] "A party is necessary if, in the absence of the party, (1) complete relief cannot be afforded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations."[47]

---

[44] Fed. R. Civ. P. 19(a)(1)(A).

[45] *Gen. Refractories Co.*, 500 F.3d at 315 (citations omitted). The Third Circuit has recognized that where liability is joint and several among multiple parties, a court may grant complete relief with respect to any one of the parties; as a result, the other parties are not necessary under Rule 19(a)(1)(A). *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993).

[46] *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996) (citations omitted). *See also Janney Montgomery Scott, Inc.*, 11 F.3d at 405 (citation omitted) ("Under Rule 19(a), we ask first whether complete relief can be accorded to the parties to the action in the absence of the unjoined party.").

[47] *Smith v. Lynn*, No. CV 18-1415-CFC-SRF, 2019 WL 2410856, at *6 (D. Del. June 7, 2019), report and recommendation adopted, No. CV 18-1415-CFC/SRF, 2019 WL 4603800 (D. Del. Sept. 23, 2019), *aff'd*, 809 F. App'x 115 (3d Cir. 2020).

In *General Refractories Co. v. First State Insurance Co.*, the Third Circuit held that an insurance company defendant was not a "necessary" party under Rule 19(a)(1)(A) because the Court could grant complete relief to the plaintiff from any insurer it named in the action.[48] The defendant-insurance company would maintain its rights for contribution, but as far as the plaintiff was concerned, the plaintiff could receive complete relief against the joint-and-several named-defendant.[49]

DAR asserts that failing to join Consultant and Company would prevent the Trust from obtaining complete relief because DAR never had dominion and control over the funds at issue in the Transfers, and acted solely as Consultant's direct agent and Company's indirect agent for purposes of transferring the cryptocurrency into Consultant's wallet in order to make the ransom payment, returning the excessive funds to Company, and all intermediate transfers to accomplish the foregoing. Although DAR argues that it never had any dominion and control over the cryptocurrency transfers, the Trust alleges that DAR had dominion and control over the two fiat Transfers to DAR.[50]

DAR entered into a Master Transaction Agreement with Consultant (the "MTA"), which governed DAR's procurement of cryptocurrency and the delivery of the cryptocurrency to

---

[48] *Gen. Refractories Co.*, 500 F.3d at 314.

[49] *Gen. Refractories Co.*, 500 F.3d at 313. *But see Amboy Bancorporation v. Bank Advisory Group*, 432 Fed. Appx. 102, 112 (3d Cir. 2011) (holding that New Jersey state law imposes joint and several liability only on tortfeasors who are 60% or more responsible for the total damages; thus, trial court could not grant complete relief without the defendant).

[50] The Transfers are: (1) the First Transfer of $5 million that Prime transferred on June 20, 2023, and (2) the Second Transfer of $4,947,500 that Prime transferred on June 21, 2023.

C10p.[51]  The MTA *only* refers to cryptocurrency; not fiat.  Additionally, the MTA "unilaterally"

reserves DAR's "right to deny service if it deems the Requested Information incomplete or the

Requested Information results in a sanctions risk deemed unacceptable to/by DAR."[52]  As a

result, DAR's arguments under the MTA, which governs cryptocurrency transfers, is misplaced.

DAR relies on *In re Herman Cantor Corp.*[53] to support its position that Consultant and

Company must be joined as necessary parties.  Therein, the plaintiff paid off a bank loan and the

bank released a certificate of deposit that was held as collateral for the loan.[54]  The plaintiff then

filed for bankruptcy and sued the bank for preference and the bank moved to add the third-party

defendant (who held the certificate of deposit as collateral).  The court held that the third-party

defendant was to be joined because the third-party defendant may be liable to the plaintiff and if

the plaintiff was unable to recover its claim against the bank, its recovery would be incomplete.[55]

In that case, the third-party defendant placed collateral on behalf of the plaintiff's loan with the

---

[51]  Declaration of David R. Hurst in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Under Rule 12(b)(7), Adv. D.I. 38 at Ex. 1(A) (MTA) at § 2.1 ("Subject to the terms and conditions hereof, [Consultant] may, in its sole and absolute discretion, request from DAR a specified amount of Cryptocurrency, and DAR may, in its sole and absolute discretion, agree to sell such Cryptocurrency on terms acceptable to [Consultant] and as set forth in a corresponding Invoice.  All sales of Cryptocurrency, as reflected on Invoices, are governed by the terms and conditions of this Master Transaction Agreement.  Hereinafter, the Master Transaction Agreement and related Invoices, are collectively referred to as the Master Transaction Agreement.  The scope of this Agreement is limited to: 1. Cryptocurrency procurement. 2. Cryptocurrency delivery to the Wallet address identified in Section 2.3(i), or to the wallet address identified in Section 2.3(iv), as directed by [Consultant]; . . . ").  *See also* MTA at § 2.5 ("To effectuate the sale of Cryptocurrency to [Consultant], [Consultant] (or an Authorized Representative, as described below) will direct DAR to send a specific amount of Cryptocurrency to a specific Cryptocurrency wallet.  DAR will confirm the amount and wallet address and will then deliver Cryptocurrency, as directed.  Cryptocurrency will be delivered only with explicit authorization from [Consultant] or an Authorized Representative.").

[52]  Declaration of David R. Hurst in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Under Rule 12(b)(7), Adv. D.I. 38 at Ex. 1(A) (MTA) at Ex. B (DAR OFAC ("Unites States Office of Foreign Assets Control") Screening and Law Enforcement Agreement) and MTA at §1.1 ("OFAC").

[53]  *Herman Cantor Corp. v. Central Fidelity Bank, N.A. (In re Herman Cantor Corp.)*, 17 B.R. 612 (Bankr. E.D. Va. 1982).

[54]  *Id.* at 613.

[55]  *Id.*

15

bank, the plaintiff, defendant, and third-party defendant were all involved in the loan transaction

between the plaintiff, bank, and as collateralized by the third-party defendant.  Here, there is no

such allegation.  Prime Core does not have any relationship (contractual or otherwise) with

Consultant and/or Company.  Complete relief can be afforded without joining the Consultant and

Company.  Consequently, *In re Herman Cantor Corp.* is distinguishable.

DAR also cites to *In re Black Elk Energy Offshore Operations, LLC*,[56] for the proposition

that the party in control of the funds should be joined.  *Black Elk* concerned a pre-petition

triangular set-off.  The court found that the third-party did not control any of the money the

plaintiff sought to recover, nor did the third-party have any claim to the money transferred.[57]

The *Black Elk* court determined that the third-party was not a necessary party because it had no

interest in the preference litigation between the debtor and defendant and the litigation presented

no threat of collateral estoppel or res judicata.[58]  The court held it could provide complete relief

to the parties without joinder.  Distinguishing the present case from *Black Elk,* DAR asserts that

Consultant *had control* over the money and DAR did not receive any transfers from Prime.

DAR further argues that Company must be joined because it funded the entire $10 million in

question, ultimately received a transfer from Prime, and now controls roughly half of the funds

(the funds unused to pay C10p).  However, DAR's reliance on *Black Elk* is misplaced, because

---

[56] *Schmidt v. The Grand Ltd. (In re Black Elk Energy Offshore Operations, LLC)*, 605 B.R. 138 (Bankr. S.D. Tex. 2019).

[57] *Id.* at 144.

[58] *Id.*

the Complaint asserts that DAR directed Prime to transfer the funds and the Company and Consultant are not necessary to grant complete relief to PCT in recovery of the Transfers.[59]

The Complaint seeks the return of $9,947,500.00 (USD) in Transfers to DAR.[60]  Notably, the Complaint does not seek to avoid and recover cryptocurrency.  Unlike the MTA governing cryptocurrency, there is no agreement regulating DAR's transfers of USD into and out of Prime. DAR's claim that it will face a burden in collecting and developing evidence regarding Company's and Consultant's roles and demonstrating that they were actual recipients or beneficiaries of the Transfers, is not altered by not joining the Consultant and the Company in this adversary proceeding.  Consultant's and Company's interests do not arise from the terms of the same transactions between Prime and DAR.[61]  There is no risk of inconsistent rulings because the preference action is against DAR and DAR will retain whatever rights it has against Consultant and Company.[62]

The Trustee asserts that DAR was the initial transferee of the Transfers (although, the Court is not ruling on those Transfers herein); Consultant and Company only became involved with DAR after the initial transfer,[63] as such they are not necessary parties to the litigation.[64]

---

[59] Adv. D.I. 1 (Complaint) at ¶¶ 82-92.

[60] Adv. D.I. 1 (Complaint) at ¶¶ 205, 218, 220.

[61] *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 972 (9th Cir. 2008) (finding that, under certain circumstances, if a claim does not arise from the terms of the same bargained contract it is not a legally protected right).

[62] *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) (citations omitted) (holding that "when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.").

[63] *See In re Michigan BioDiesel, LLC*, 510 B.R. 792, 799 (Bankr. W.D. Mich. 2014).

[64] *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980) (holding that "potential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible."); *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, No. 94 C 3303, 1996 WL 435180, at *6 (N.D. Ill. July 31, 1996)

DAR asserts that its resulting liability to the Trust may be inconsistent (i.e., if Consultant and Company are joined, DAR may have to repay less); but DAR's obligation to the Trust would not change, because joining Consultant and Company would only implicate the obligations of Consultant and Company, and not whether the Trust can recover on a preference action.[65]

Additionally, neither Consultant nor Company possess an interest in the pending litigation that is "legally protected."[66] "Any effect that a decision of the court may have on the absent persons is immaterial. Even the possibility that an already named party might have to defend its rights in a subsequent suit by the party who is claimed to be 'necessary' does not make that party necessary."[67] DAR retains whatever rights it may have against Company and Consultant. Consequently, DAR has not shown[68] that Company and Consultant are necessary to provide full relief to the Plaintiff.

(cleaned up) ("The 'complete relief' provision of Rule 19 relates to those persons already parties and does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible.").

[65] *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984) (citations omitted) ("Rule 19 does not speak of inconsistent 'results.' Rather, it speaks in terms of inconsistent 'obligations.' As pointed out, defendant's scenario does not result in subjecting the defendant to inconsistent obligations, but instead imposes the consequences of inconsistent results.").

[66] *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty.*, 547 F.3d at 970 (citation omitted).

[67] *Chao v. Lexington Healthcare Grp., Inc. (In re Lexington Healthcare Grp., Inc.)*, 316 B.R. 658, 661 (Bankr. D. Del. 2004) (citations omitted).

[68] *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) (citations omitted) (holding that "when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.").

Moreover, this adversary proceeding is a preference-avoidance action,[69] and only the

Debtors, and now the Trustee, may assert avoidance actions.[70]  A preference action cannot be

asserted by the Defendants against Company and Consultant.

As a result, Consultant and Company are not necessary parties to the Trust's action

against DAR.

### 4.  Rule 19(a)(1)(B): Neither Consultant nor Company are Indispensable

Notwithstanding a determination that complete relief may be accorded to those persons

already named as parties to an action, a court still may deem a party "necessary" under Rule

19(a)(1)(B).  Under Rule 19(a)(1)(B), a required party may be one who "claims an interest

relating to the subject of the action and is so situated that disposing of the action in the person's

absence may . . . impair or impede the person's ability to protect the interest; or leave an existing

party subject to substantial risk of incurring double, multiple, or otherwise inconsistent

obligations because of this interest."[71]  Case law distinguishes between a legally protected

interest, which supports joinder under Rule 19, and a financial interest, which does not.[72]  Here,

---

[69]  The Complaint includes counts for (i) avoidance of preferential transfer pursuant to 11 U.S.C. § 547(b);
(ii) avoidance of constructive fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B); (iii) recovery of avoided
transfers from the Defendants pursuant to 11 U.S.C. § 550; and (iv) claims objection pursuant to 11 U.S.C. § 502.
*See* Adv. D.I. 1 (Complaint) at ¶¶ 169-196.

[70]  *Wansdown Pro. Corp. N.V. v. Azari (In re Wansdown Props. Corp. N.V.)*, 647 B.R. 23, 32–33 (Bankr. S.D.N.Y.
2022) (cleaned up, citations omitted) ("The Code bestows broad powers upon a trustee to avoid certain transfers of
property made by a debtor before the filing of a bankruptcy petition.  When the Trustee succeeds, the transferred
property is returned to the estate for the benefit of all persons who have presented valid claims.  Specifically, section
544(b) of the Code provides that a trustee may avoid any transfer of an interest of the debtor in property that is
voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the
Code.  Where no trustee is appointed, a debtor in possession is statutorily vested with all the rights and powers
(other than rights to compensation and with immaterial exceptions) of a bankruptcy trustee.").

[71]  Fed. R. Civ. P. 19(a)(1)(B).

[72]  *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005).

DAR may have financial claims against Company and Consultant, but Company and Consultant do not have legally protected interests in the adversary action.

DAR alleges that it will be exposed to inconsistent, outsized obligations if Consultant and Company are not joined as required parties. DAR asserts that although it was directed by Consultant, Company (Consultant's client) was directly involved. Additionally, DAR asserts it was acting solely as a direct agent of Consultant (or as a mere conduit of Consultant). DAR argues that if Consultant and Company are not joined, then the Trust will have to file a separate action to recover the transfers under section 550 because DAR did not receive transfers from any of the Debtors.

Neither Consultant nor Company have claimed any interest in this adversary proceeding. Nor would a judgment against DAR leave DAR with any risk of incurring multiple or inconsistent obligations.[73]

Accordingly, neither Consultant nor Company are indispensable parties to this adversary proceeding under Rule 19(a)(1)(B).

---

[73] *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 745 (Bankr. S.D.N.Y. 2008) (citation omitted) (holding that "where the plaintiff sues one of two tortfeasors, the defendant does not face "multiple liability" because it may lose in the original action and then lose the subsequent action for contribution against the other joint tortfeasor.").

## CONCLUSION

For the reasons set forth above, the Court concludes that neither Consultant nor Company are necessary parties for the Plaintiff to have complete relief, nor are they indispensable. Additionally, the Snyder Declaration does not provide information to change the Court's analysis on the Motion to Dismiss.  The Motion for Leave and the Motion to Dismiss will be denied.  An Order will be issued.

Dated: November 7, 2025

_____
J. Kate Stickles
United States Bankruptcy Judge